James F. KNOTT, Movant,

v.

CROWN COLONY FARM, INC.; Dick Brooks, A/K/A Richard A. Brooks; and Brook Ledge, Inc., Respondents.

No. 92–SC–892–DG.

Supreme Court of Kentucky.

Nov. 24, 1993.

Thomas H. Burnett, Lexington, for movant.

Thomas C. Marks, Robert S. Miller, Lexington, for respondent, Crown Colony.

Joseph M. Hoffman, Versailles, for respondent, Brook Ledge, Inc.

Timothy Neil Philpot, Lexington, for respondent, Dick Brooks.

LEIBSON, Justice.

The principal question we address in this appeal is whether failure to name the attorney of Crown Colony Farm, Inc. as a party is fatal to the appeal.

In October–November 1990, James Knott's estranged business partner, Dick Brooks, boarded a number of horses with Crown Colony. One of these horses, a thoroughbred mare by the name of Silver Design, was actually owned by the Dixie Sport Partnership of which Knott owned 75%. Knott claims that he was the managing partner in the Knott–Brooks partnership, that Silver Design was to be sold to his account, and that Brooks, acting without authority, misappropriated the horse when he boarded it with Crown Colony. When Brooks subsequently failed to pay the board bill on the horses, Crown Colony initiated an action to enforce its agister's lien pursuant to KRS 376.400.

Knott further claims that there is evidence from the record from which it may be reasonably inferred that Crown Colony was aware Brooks was not the owner of Silver

Design and was without authority from the owner to board Silver Design as part of his herd. Finally, Knott claims that the statutory agister's lien, provided for by KRS 376.-400, and the boarding contract which supplemented it, did not provide authority to sell this horse because both refer to the "owner" and Brooks was not the owner, and was acting contrary to the wishes of the owner.

Crown Colony moved for summary judgment claiming that Brooks, if not the owner, was Knott's agent, and that, in any event, Brooks's interest in the partnership sufficed to sustain the sale of the horse. Knott filed a cross motion for summary judgment. The Fayette Circuit Court overruled Knott's motion and sustained Crown Colony's motion for summary judgment without stating reasons, simply citing "various legal memoranda and affidavits, and arguments of all counsel."

The Summary Judgment and Order of Sale, entered May 28, 1991, specified that certain horses, including Silver Design, were subject to sale to pay for board under Crown Colony's agister's lien and for attorney's fees related to the action to collect the agister's lien. The trial court ordered sale of Silver Design if necessary to satisfy the lien and pay the attorney's fees incurred by Crown Colony. All of the horses, including Silver Design, to which movant had by this time acquired full title, were sold.[1]

After the judicial sale was held, in a July 11, 1991 order, the trial court set the amount awarded for attorney's fees and added them to the judgment amount from the May 28, 1991 summary judgment and order of sale. Money from the sale of Silver Design exceeded the board bill due on her, and the remaining proceeds were used both to satisfy the debt due on Brooks's other horses and to pay Crown Colony's attorney's fees.

Knott appealed both the May 28, 1991 summary judgment and order of sale and the July 11, 1991 order approving the amount of attorney's fees sought by Crown Colony. In an October 8, 1991 order, a motion panel of the Court of Appeals sustained a "motion to

1. Prior to the sale respondent refused movant's offer to pay the board bill on Silver Design and remove her from the premises.

strike legal issues" holding that the right to challenge sale of Silver Design to pay attorney's fees was precluded from the appeal of the summary judgment and order of sale because Crown Colony's attorney was not named as an additional party appellee. However, the motion panel denied Crown Colony's motion to dismiss the appeal on this ground. In that same October 8, 1991 order, the motion panel dismissed Knott's separate appeal of the second trial court order, entered July 11, 1991, approving the amount of the attorney's fees.

Thereafter, a different panel of the Court of Appeals was assigned to address the merits of the controversy. On October 2, 1992, this second panel held that Knott's appeal was moot because of the previous order of the motion panel and affirmed the trial court's judgment. The reason the Court of Appeals so held was because, in the trial court's July 11, 1991 order setting the amount of the attorney's fees and entered after the judicial sale was held pursuant to the first order, the total award to Crown Colony, which included attorney's fees, was in an amount that more than consumed the proceeds from the sale of the horses involved.

Thus, when this case was heard on the merits by the Court of Appeals, with the attorney's fees issue stricken from the appeal and with the amount obtained upon sale of the horses insufficient to satisfy the award for attorney's fees, the Court of Appeals decided "Knott lost his opportunity to appeal." While dismissing this case as moot on procedural grounds, the Court of Appeals volunteered lengthy "observations" regarding the merits of the controversy, none of which have binding effect under the circumstances.

However, Knott's claim in this appeal is not about the *amount* of the attorney's fees, the subject of the trial court's second order. Knott claims that Crown Colony's agister's lien and boarding contract did not attach to the horse, Silver Design, in the first instance and that the trial court erred in so holding and that, on this issue, Crown Colony's attorney, albeit an incidental beneficiary, was not a necessary party to the appeal: that if Knott wins on the merits, the amount obtained from the judicial sale of his horse belongs to him and cannot be disbursed to pay Crown Colony's attorney's fees. The amount of attorney's fees, but not the fact they are to be paid from the proceeds of the sale, derives from the trial court's second order and Knott does not question the amount of the fees.

Knott moved for discretionary review in our Court claiming the Court of Appeals erred in refusing to reach the merits of his appeal, being sidetracked by failure to name Crown Colony's attorney as an additional party. We agree, and therefore we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for consideration of the merits.

The question before us is whether the interim order from the Court of Appeals' motion panel, holding that Knott "shall be precluded from raising the issue of attorney fees in this appeal for failure to name the attorneys as parties," was correct. It is this order that triggered the Court of Appeals' final decision that subsequent payment to the attorneys of the proceeds from the sale of Silver Design and her foal rendered this appeal moot.

■ Crown Colony insists that a threshold issue which we must first address is whether Knott was obliged to seek discretionary review in our Court from the motion panel's October 8, 1991 order. If an immediate motion for discretionary review was required, the motion made after the final decision on October 2, 1992, from which this appeal was taken, was filed too late.

Crown Colony claims a motion for discretionary review from the interim order is required by CR 76.20(2)(b). Specifically, CR 76.20, in ten subparagraphs, covers the procedure for filing a motion for discretionary review. CR 76.20(2), is styled "Time for Motion," and subparagraph (b) states in pertinent part:

"A motion for discretionary review by the Supreme Court of a Court of Appeals decision shall be filed within 20 days after the date of the order or opinion sought to be reviewed...."

The quoted language does not specify review of a *final* order or opinion in so many words, but we can conceive of no other rational interpretation consistent with appellate practice. Crown Colony has missed the point of CR 76.20 by emphasizing that it refers to "the order or opinion sought to be reviewed," and ignoring the fact that it is talking about a "decision" of the "Court of Appeals," which implies a "decision" disposing of the case, not an interlocutory order.

A parallel procedure in CR 73.02, which requires appeals be taken "within 30 days after the date of notation of service of the judgment or order," has always turned on the question of finality, and finality as defined in CR 54.01:

> "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02. Where the context requires, the term 'judgment' as used in these Rules shall be construed 'final judgment' or 'final order.'"

An interim or interlocutory order at the trial court level, even one that ultimately proves to be fatal to the outcome of the case, cannot be appealed before the final decision of the trial court disposing of all issues.[2]

Thus, the object of the rules is to *prevent* rather than to require an appeal from an interim order. Such an order is by its nature subject to further review in the court where the case is still pending, either at the request of a party or sua sponte, until a final, appealable decision has been entered, whether by judgment, order or opinion. Insofar as triggering the need for an immediate appeal, there is neither reason nor authority for treating decisions on motion panel which make no final disposition of the case any differently than interlocutory orders in the trial court. Crown Colony's argument to the contrary is an invitation to inject chaos into the appellate procedure, an invitation which we decline.

This particular order from the motion panel specified that the motion to dismiss appeal number 91–CA–1401–MR (this case) was de-

nied. This order was set out in the same document with further orders that covered motions in two separate appeals involving different aspects of this same case: one order that specified that one of these two other cases was dismissed and another that specified that in a third case the "appellant's motion to withdraw" was ordered "treated as motion to dismiss appeal." But these orders covered three separate appeals with three separate Court of Appeals case numbers, and the orders in these other cases added nothing to the finality of the appeal in this case. There is no logic to Crown Colony's "law of the case" argument founded upon dismissal of these other cases, even if we assume that the fact the lawyer was not named as an appellee was the reason for their dismissal. These separate cases are not the law of *this* case.

■ Thus, having first worked our way through the vegetation overgrowing the real issue, we come now to whether the Court of Appeals properly ruled that Crown Colony's attorney was a necessary party to the decision of this particular appeal. Knott appealed the question whether Silver Design and her foal were covered by the agister's lien and the boarding contract. Now that these horses have been sold, if they should not have been included, Knott claims that he, rather than Crown Colony, is entitled to the proceeds.

Our latest pronouncements on the right to recover attorney's fees and whether the attorney is a necessary party are. found in *Louisville Label, Inc. v. Hildesheim*, Ky., 843 S.W.2d 321, 326 (1992):

> "Except for fee-shifting statutes which provide that a trial court may assess an attorney's fee for one party against the other, such as provided for in Civil Rights Act litigation by KRS 344.450 and in divorce litigation by KRS 403.220, the obligation to pay one's own attorney falls upon the person employing the attorney rather than upon the opposing litigant."

---

2. CR 54.02, of course, makes an exception not applicable here, where there is "more than one claim for relief ... presented" and the trial court's order specified both that "there is no just reason for delay" of the appeal, and "the judgment is final."

In *Louisville Label,* the appellee made an argument very similar to the one Crown Colony makes in this case, that the appeal should have been dismissed because the appellee's attorney was not named as an additional party when appealing an order involving attorney's fees. The trial court, in agreeing to permit a voluntary dismissal without prejudice, had in its order imposed as a condition: "with leave to refile provided all Mr. Hildesheim's cost & expenses [attorney's fees] are paid as a condition to refile." 843 S.W.2d at 327. In addressing the question whether the effect of the order was to make Hildesheim's attorney a necessary party upon appeal of the order, we stated:

"On the contrary, the award of attorney's fees to Hildesheim, had it been proper, would be by way of equitable reimbursement for a debt for which Hildesheim is, himself, the primary obligor. In these circumstances Hildesheim, not his attorney, is the real party in interest and the indispensable party to the appeal." 843 S.W.2d at 326.

The statute providing for an agister's lien does not include a right to recover attorney's fees. It states:

"Any owner or keeper of a livery stable, and a person feeding or grazing cattle for compensation, shall have a lien for one (1) year upon the cattle placed in the stable or put out to be fed or grazed by the owner, for his reasonable charges for keeping, caring for, feeding and grazing the cattle. The lien shall attach whether the cattle are merely temporarily lodged, fed, grazed and cared for, or are placed at the stable or other place or pasture for regular board." KRS 376.400.

Crown Colony's right to recover attorney's fees in this case derives solely from the boarding contract between Crown Colony and Brooks, which provides in pertinent part:

"3. BILLINGS.... If the collection of any sum hereunder is turned over to CCF, Inc. attorneys, Owner will pay the costs and reasonable attorney fees incurred by CCF, Inc."

It was pursuant to this boarding contract that Brooks boarded Silver Design with Crown Colony.

In the present case, as in *Louisville Label,* the obligation to pay the attorney is not a direct obligation created by statute but only an obligation to reimburse the party primarily liable for expenses "incurred" (see Boarding Contract, paragraph 3, quoted *supra*). The contractual obligation here is similar to the obligation to reimburse as a condition for refiling imposed as a matter of equity in *Louisville Label. Louisville Label* is squarely on point, and outcome determinative.

However, even if we were to assume that the agister's lien statute, rather than the boarding contract, underlies the obligation to reimburse Crown Colony for attorney's fees "incurred" out of the court ordered sale, we would not consider this a case where the attorney is a necessary party. Crown Colony makes this assumption, and relies upon a line of cases starting with *Tyler v. Bryant,* Ky., 394 S.W.2d 454 (1965) as authority for doing so.

In *Tyler,* we directed that an attorney's fee be paid in a divorce case pursuant to KRS 453.120 (now replaced by KRS 403.220). KRS 403.220 permits a trial court, in a divorce case, to "order a party to pay a reasonable amount ['from time-to-time'] for the cost to the other party of maintaining or defending ... and for attorney's fees." No fee was awarded to the attorney directly or by name, rather the fee was allowed to a wife in a divorce case and directed to be included as a court cost item. The *Tyler* court reasoned that an attorney should be made a party to the appeal in either case. It stated that, "[a]lthough the fee for services performed was not adjudged to be paid directly to him; nevertheless, the award was made for his [the attorney's] benefit, with the result that he is the real party in interest." *Id.* at 455. The Court then decreed that in all future appeals to this Court wherein the fee in a divorce case is awarded to a spouse instead of to the attorney, the attorney will be deemed a necessary party.

Unlike other types of cases, divorce litigation carries with it the inherent likelihood of later reconciliation between the parties, where an attorney's client may reunite with and join the opposition in challenging an

award of attorney's fees. The movant notes that such has led to legislation which allows a judgment for attorney fees in a divorce case to be directed in favor of an attorney and enforced in his name. However, such legislation has not been enacted as applicable to other types of legal actions.

Prior to *Tyler*, attorneys were only considered necessary parties to an appeal contesting an award of attorney's fees if the fee award had been made directly to the attorney. *See Bartlett v. Louisville Trust Co.*, 212 Ky. 13, 277 S.W. 250 (1925). The award to the attorney was considered to have made him a party to the litigation. *See Hutchinson v. Hutchinson*, 293 Ky. 270, 168 S.W.2d 738 (1943). On the other hand, if the award of attorney's fees was made to the party, rather than his attorney, the attorney was not a necessary party to an appeal contesting the award. *See Fidelity & Columbia Trust Co. v. Thompson*, 214 Ky. 389, 283 S.W. 397 (1926).

The problem is that language in *Tyler v. Bryant* tends to obscure the difference between a direct obligation imposed by statute and the present situation where the respondent is the primary obligor. A line of cases, some citing *Tyler v. Bryant*, have declared the attorney is a real party in interest who must be named on appeal in situations where there has been an award of an attorney's fee simply by way of reimbursing a party for an expense incurred, even though the party who is primarily liable for the attorney's fee is already a named party on the appeal and responsible for litigating the issue from which the right to an attorney's fee derives. The Court of Appeals has uniformly applied the ruling in *Tyler* to every case in which an award of attorney's fees is appealed. *See, for example, Franklin County Fiscal Court v. Stewart*, Ky.App., 757 S.W.2d 194 (1988); *Ford Motor Company v. Mayes*, Ky.App., 575 S.W.2d 480 (1978). Such an application of the *Tyler* holding makes little sense and has in fact led to the establishment of a poorly reasoned body of law, which disqualifies the appeals of parties deserving of relief for purely arbitrary reasons.

■ Absent an award of fees to an attorney by judgment in his or her favor (thus allowing the attorney enforcement of the award by execution), there is no reason for requiring the attorney to be named on appeal as a necessary party. One of the fundamental principles in the American legal system is that parties are responsible for their own attorneys' fees. *See Louisville Label Co. v. Hildesheim, supra.* In the present case, if there is a holding on remand that the trial court acted erroneously in directing proceeds from the sale of Knott's horse to go towards attorney's fees incurred by Crown Colony, this would not relieve Crown Colony from its obligation to pay its attorneys for services rendered. It follows that any such award would be for the benefit of the respondent and not its attorneys. The attorney is at most an incidental beneficiary, rather than the primary beneficiary of the boarding contract. As such, Crown Colony is actually the real party in interest and the logic in *Tyler* is wholly inapplicable.

Here the specific language of the judgment from which this appeal is taken was that "Brooks shall pay to Plaintiff the sum of (i) ... the agister's claims ... *plus* (ii) attorney's fees incurred by Plaintiff related to and in this action ...," and the Order of Sale directed that proceeds "be applied ... to the sums owed Plaintiff by Brooks set out [above]." Crown Colony's attorney was not made a party by operation of this Order, nor was the order a basis for the attorney to obtain execution in his own name. In these circumstances there is no reason to require that he be named a party for purposes of this appeal.

*Braden v. Republic–Vanguard Life Ins. Co.*, Ky., 657 S.W.2d 241 (1983) is an appropriate precedent for this decision. In *Braden*, the widow of a deceased mortgage holder sought to recover from a credit life insurer the balance of mortgage payments due to the mortgagee, Baldwin–United Mortgage Co. The widow appealed from a summary judgment in favor of the credit life insurer, and when the Court of Appeals dismissed the appeal for failure to join Baldwin–United as a necessary party to the appeal, we took discretionary review, reversed the decision of the Court of Appeals, ordered the motion to dismiss overruled, and remanded the case to

the Court of Appeals to decide the merits of the appeal. We did so because Baldwin–United was not a party "whose absence prevents the appellate court from granting complete relief among those already parties . . . to the appeal." *Id.* at 243.

In the present case Crown Colony's attorney is not a "party whose absence prevents the appellate court from granting complete relief among those already parties." The issue here is whether the trial court properly rendered summary judgment against Knott on his claims that Silver Design and her foal were not subject to either the statutory lien or the boarding contract. The fact that attorney's fees were included in Brooks's debt to Crown Colony, the real party in interest, did not render this appeal moot.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further consideration of the merits of the controversy.

All concur.