COMMONWEALTH of Kentucky, by and Through Jack CONWAY, Attorney General, Petitioner,

v.

Honorable Phillip J. SHEPHERD, Judge Franklin Circuit Court, Division I, Respondent.

and

Gregory Wilson; Thomas Clyde Bowling; Ralph Baze; and Brian Keith Moore, Real Parties in Interest.

and

Kentucky Department of Corrections and Commonwealth of Kentucky, by and Through Jack Conway, Attorney General, Petitioners,

v.

Honorable Phillip J. Shepherd, Judge Franklin Circuit Court, Division I, Respondent.

and

Gregory Wilson; Thomas Clyde Bowling; Ralph Baze; and Brian Keith Moore, Real Parties in Interest.

Nos. 2010–SC–000586–OA, 2010–SC–000589–OA.

Supreme Court of Kentucky.

March 24, 2011.

*OPINION AND ORDER*

## I. INTRODUCTION.

The Commonwealth of Kentucky, By and Through Jack Conway, Attorney General, and the Kentucky Department of Corrections[1] have brought this original action seeking a writ from this Court preventing the Franklin Circuit Court from proceeding further in a declaratory judgment action brought in that court by certain death-row inmates who have challenged Kentucky's lethal injection protocol. We decline to issue the requested writ or otherwise disturb a temporary injunction issued in the declaratory judgment action by the Franklin Circuit Court.

## II. THIS ACTION STEMS FROM PROCEEDINGS IN A DECLARATORY JUDGMENT ACTION PENDING IN THE FRANKLIN CIRCUIT COURT.

The underlying action started in the Franklin Circuit Court when certain death-row inmates filed a declaratory judgment action challenging Kentucky's lethal injection protocol on the basis that the then-existing protocol was not properly adopted as an administrative regulation under the Kentucky Administrative Procedures Act. After this Court ruled that the Department of Corrections was required to promulgate most portions of the lethal injection protocol as an administrative regulation[2] and Corrections established the protocol by administrative regulation,[3] the Franklin Circuit Court granted the inmates leave to reopen the case and amend

---

1. The Petitioners here (the Attorney General and the Department of Corrections) are clearly separate entities, which will not always share the same interest. But in the case now before us, they make very similar arguments; and we will often collectively refer to them as "Petitioners" or "the Commonwealth."

2. *See Bowling v. Kentucky Department of Corrections*, 301 S.W.3d 478, 492 (Ky.2009) ("The Department of Corrections is required by Kentucky law to promulgate a regulation as to all portions of the lethal injection protocol except those limited issues of internal management that are purely of concern to Department personnel.").

3. *See* 501 Kentucky Administrative Regulations (KAR) 16:330 (Lethal injection protocol adopted effective May 7, 2010). Other regulations concerning administration of the death penalty were also adopted effective May 7, 2010, and are contained in 501 KAR Chapter 16.

their declaratory judgment petition to incorporate the argument that the regulation did not comply with the requirements of Kentucky Revised Statute (KRS) Chapter 13A, the statutory chapter concerning administrative regulations.

The Franklin Circuit Court also allowed another death-row inmate, Gregory L. Wilson, who had not been an original party, to intervene in the reopened and amended declaratory judgment action. Wilson's death sentence was imposed by the Kenton Circuit Court;[4] and he moved to intervene in the Franklin Circuit Court proceeding after the Governor signed a warrant on August 25, 2010, for his execution to take place on September 16, 2010. The Kenton Circuit Court had refused to stay the execution on September 2, 2010.[5]

Wilson sought injunctive relief from the Franklin Circuit Court, asking that court to stay or enjoin the implementation of the death warrant against him. The Franklin Circuit Court entered a written order, entitled "Temporary Injunction Under CR 65.04," in which it granted Wilson's motion for injunctive relief and a stay of "any implementation of the death warrant signed in his case by the Governor." And the court restrained and enjoined the Commonwealth "from taking any steps to implement the administrative regulations at issue in this action (501 KAR Chapter 16), or to otherwise execute the Governor's death warrant, until the entry of a final judgment in this action, or until further orders of this Court entered after adequate notice and a hearing."

The Franklin Circuit Court explained its reasoning for granting Wilson injunctive relief, stating "there are at least two substantial questions of law regarding the validity of the administrative regulations that require the [Franklin Circuit Court] to issue an injunction to preserve the *status quo* until the entry of a final judgment." First, the circuit court perceived an apparent conflict between the regulations, which the circuit court interpreted to require a combination of drugs in administering lethal injections,[6] and KRS 431.220, which the circuit court interpreted to allow for use of either a single drug or a combination of drugs in administering lethal injections.[7] Second, the circuit court found a lack of any provision in the regulations prohibiting the execution of insane or mentally retarded inmates and lack of "adequate safeguards" in the regulations to prevent the execution of insane or mentally retarded inmates, creating constitutional and statutory violations.[8]

Petitioners contend that these two issues were not raised by the parties to the declaratory judgment action but were im-

---

4. *See Wilson v. Commonwealth*, 836 S.W.2d 872 (Ky.1992); *Wilson v. Commonwealth*, 975 S.W.2d 901 (Ky.1998), *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 359 (1999); *Wilson v. Parker*, 515 F.3d 682 (6th Cir.2008), *cert. denied in Wilson v. Simpson*, —— U.S. ——, 130 S.Ct. 113, 175 L.Ed.2d 75 (2009).

5. The Kenton Circuit Court denied Wilson's motions for DNA testing, to prohibit imposition of the death penalty, for a qualified protective order and to compel production, and for a stay of execution. An appeal from that order is pending before this Court in *Wilson v. Commonwealth*, 2010–SC–000573–MR.

6. *See* 501 KAR 16:0330 § 3.

7. KRS 431.220(1)(a) provides, in pertinent part, that except where a death-row inmate received a death sentence by a certain date and chooses electrocution, "every death sentence shall be executed by continuous intravenous injection *of a substance or combination of substances sufficient to cause death.*" (emphasis added).

8. We express no opinion on the merits of the Franklin Circuit Court's holdings on these issues.

properly interjected into the action by the Franklin Circuit Court on its own motion.

### III. THE RELIEF SOUGHT BY PETITIONERS IN THIS COURT.

The Petitioners ask this Court for a writ to

- dismiss the underlying declaratory judgment action now pending in the Franklin Circuit Court;
- prohibit the Franklin Circuit Court from entering any orders concerning matters already determined by the Kenton Circuit Court or that are pending before this Court; and
- issue an order superseding and dissolving the temporary injunction that stayed Gregory Wilson's execution.

The Commonwealth clearly requests extraordinary relief in the form of a writ under Kentucky Rules of Civil Procedure (CR) 76.36 and Ky. Const. § 110(2)(a) from the temporary injunction issued by the Franklin Circuit Court; but the Commonwealth also invokes CR 65.07, which is nominated as pertaining to "Interlocutory relief in Court of Appeals prior to final judgment," apparently as a precautionary measure. Although CR 65.07 expressly provides that a party affected by entry of a temporary injunction—such as that at issue here—may seek relief in the Court of Appeals,[9] this rule does not expressly allow such relief from this Court. The Commonwealth argues that the instant action is still proper in this Court primarily because the parties seeking relief below are death-row inmates seeking a declaratory judg-

ment regarding the state's death-penalty protocols.

The Real Parties in Interest (death-row inmates including Wilson)[10] do not take issue with this action being filed in this Court, but the Real Parties in Interest argue that the Commonwealth may not seek a writ for relief from the temporary injunction. They contend that the normal standard of review for a temporary injunction under CR 65.07 should apply rather than the standard for determining availability of a writ, which they contend to be an easier standard to meet. But the Commonwealth requests extraordinary relief beyond merely dissolving the temporary injunction—the Commonwealth asks us to order the Franklin Circuit Court to dismiss the declaratory judgment action and order that court to desist from entering orders pertaining to matters decided by or pending before this Court or the Kenton Circuit Court. So we will construe the instant action as a writ petition rather than as a CR 65.07 motion, although we also review the granting of the temporary injunction under CR 65.07 standards in order fully to address the Commonwealth's concerns that the temporary injunction was improperly entered. Because we decline to issue a writ in the instant action, we also decline to hold that an attempt to vacate a stay of execution must always be filed and reviewed as a petition for extraordinary relief under CR 76.36 or as a motion for interlocutory relief from a temporary injunction under CR 65.07.

We recognize that the Petitioners urge this Court to hold that a writ action is an appropriate vehicle for challenging a stay

---

9. CR 65.07(1)(a).

10. Other death-row prisoners also appear to be affected by the Franklin Circuit Court's temporary injunction, which enjoins the Commonwealth from implementing the regulations establishing a death penalty protocol

(501 KAR Chapter 16) until the Franklin Circuit Court enters final judgment in the declaratory judgment action or until further orders of the Franklin Circuit Court after adequate notice and a hearing.

of execution, but we decline to do so in this case because resolution of that issue is not necessary to decide this case. Furthermore, we decline the Petitioners' invitation to adopt standards from federal cases for assessing writ actions concerning stays of execution because Kentucky case law has established standards for assessing writ actions.

## IV. ANALYSIS.

### A. We Will Assume this Original Action is Properly Filed in this Court.

Although the Real Parties in Interest argue in their response to the petition that it was improper for the Commonwealth to seek a writ, they do not argue that the Commonwealth should have sought a writ

from the Court of Appeals rather than this Court.[11] So we will not attempt to resolve any actual or apparent controversy regarding whether this original action seeking a writ should have been properly filed in the Court of Appeals rather than this Court[12] but will simply assume, for purposes of resolving this case only, that this original action was properly filed in this Court rather than in the Court of Appeals.

### B. We Decline to Issue a Writ.

"[W]hether to grant a writ is always discretionary"[13] even when a petitioner for a writ makes the required showings to meet the stringent standard for making writ relief possibly available.[14] Our precedent requires that to be able

11. The Response states that: "Real Parties in Interest [the death-row inmates] agree that this Court is the proper forum. However, a writ is not the proper procedural vehicle for invoking this Court's jurisdiction and authority."

12. Although this Court generally has only appellate jurisdiction, this Court also has the power under the Kentucky Constitution to issue writs—not just hear appeals of writ cases in certain circumstances. Specifically, this Court has the "power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, or as may be required to exercise the control of the Court of Justice." Ky. Const. § 110(2)(a). The Court of Appeals also has the power to issue writs, and Kentucky Supreme Court Rules (SCR) 1.030(3) (concerning the powers of the Court of Appeals) even specifies that "[p]roceedings in the nature of mandamus or prohibition against a circuit judge shall originate in the Court of Appeals." But CR 76.36 provides that "[o]riginal proceedings in an appellate court may be prosecuted only against a judge or agency whose decisions may be reviewed as a matter of right by that appellate court[,]" which seems to suggest that an original action seeking a writ would be properly filed in the Supreme Court if a matter-of-right appeal of the trial judge's decision would be filed in the Supreme Court. Because the instant writ action

concerns the propriety of the Franklin Circuit Court's granting a temporary injunction, we also note that CR 65.07(1) also provides that one "may" seek relief from the Court of Appeals when a trial court grants a temporary injunction.

*See also Hilbert v. Seay,* 2008–SC–000312–OA, 2008 WL 3890410 at *3 (Ky. Aug. 21, 2008) ("a petition for a writ of prohibition *may*—but not must—be filed in the Supreme Court, bypassing its traditional forum in the Court of Appeals, when it concerns a decision that may be reviewed by this Court as a matter of right. Assuredly, this concerns instances wherein the death penalty is being sought and double jeopardy is the issue."). We express no opinion on whether this writ action could or should have been filed in the Court of Appeals; but, given the parties' apparent agreement that the action is properly before us rather than the Court of Appeals, we simply assume, for resolution of this case only, that the present writ action is properly resolved by this Court rather than the Court of Appeals.

13. *Cox v. Braden,* 266 S.W.3d 792, 797 (Ky. 2008) (internal quotation marks omitted).

14. *Id.* ("a writ is never mandatory, even upon satisfaction of one of the tests laid out in *Hoskins* "—referring to writ standard established in *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004)).

possibly to obtain a writ for extraordinary relief—such as a writ of prohibition or a writ of mandamus—one must show that:

(1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.[15]

But even where a petitioner accomplishes the difficult task of making one of these two alternative showings, the issuance of a writ is not mandatory.[16] And given the magnitude of the issues presented here concerning not only whether particular individuals might be properly executed by the state but also the validity of our state protocol for execution and the inherent difficulties in determining the merits of such issues upon the limited record in a writ case,[17] we will not exercise our discretion to issue a writ here, even assuming that the Petitioners have made the required showings to make a writ available. We certainly recognize that some view any delay in carrying out the death sentences of Wilson and other death-row inmates as an injury and an injustice to the Commonwealth, but we also believe that granting the requested writ would not further Commonwealth's officers' efforts to meet obligations to comply with the law in administering the death penalty. In short, we do not believe it would be in the public interest to grant the relief requested by the Petitioners in this writ proceeding.

The Petitioners request not only that this Court dissolve the temporary injunction staying Wilson's execution but also that this Court prohibit the Franklin Circuit Court "from entering any orders concerning matters already determined by the Kenton Circuit Court or that are pending before this Court" and order the Franklin Circuit Court to dismiss the death-row inmates' declaratory judgment action challenging the validity of the execution protocol.

We do not believe our issuing a writ to interfere with the Franklin Circuit's Court's control of the case in this manner would be in the public interest. We recognized the important public interest in establishing a valid execution protocol in *Bowling v. Kentucky Department of Corrections* and will not order the Franklin Circuit court to dismiss the declaratory judgment action challenging the validity of this protocol. And we discern no reason to enter an order limiting what matters may be considered by the Franklin Circuit Court, especially because it appears to us that the Franklin Circuit Court properly focused its attention on the validity of the execution protocol.[18] Any possible over-

---

15. *See, e.g., Estate of Cline v. Weddle*, 250 S.W.3d 330, 334 (Ky.2008), *quoting Hoskins*, 150 S.W.3d at 10.

16. *Cox*, 266 S.W.3d at 797.

17. *See id.* at 795 (noting that writ actions are decided upon a limited record and bypass the normal appellate procedure, thus, increasing the chance of incorrect rulings unjustly affecting litigants).

18. The Franklin Circuit Court noted that "[t]he facts related to Wilson's prosecution are not directly relevant to the validity of the plaintiffs' challenge to the administrative regulations at issue here, but are noted because they are relevant for purposes of balancing the equities in considering his motion for injunctive relief." The Franklin Circuit Court noted apparent irregularities in Wilson's trial and found there was a good faith basis to believe he may be ineligible for the death penalty due to mental retardation in weighing the equities for granting injunctive relief. It also included in its conclusions of law its determination that Kentucky's death penalty

stepping into areas more properly determined by other courts can be corrected on appeal of the final judgment ultimately entered in the declaratory judgment action.

Although we recognize the Commonwealth's concern over delays in carrying out its sentences, the stay of execution entered by the Franklin Circuit Court is of little practical effect now because Wilson's death warrant has expired; and we are aware of none others pending. We also recognize that the temporary injunction essentially forbids the Commonwealth from performing any more executions until the Franklin Circuit Court enters final judgment in the declaratory judgment action, so we are not proclaiming that the matter is totally moot. Furthermore, Wilson's appeal of a Kenton Circuit Court order denying him relief is currently pending before this Court. We believe that—especially in the absence of any pending execution warrant—the wisest course is simply to allow the current litigation to proceed. This includes the Franklin Circuit Court declaratory judgment action and Wilson's appeal of the Kenton Circuit Court's order.

## V. NO ABUSE OF DISCRETION IN GRANTING TEMPORARY INJUNCTION.

■ Not only do we believe that extraordinary relief in the nature of a writ is inappropriate, but we discern no clear abuse of discretion in the Franklin Circuit

Court's granting of the temporary injunction.[19] The Franklin Circuit Court appropriately balanced the equities in our view, stating as follows:

> In balancing the equities, the Court recognizes that Wilson's death penalty, as imposed by the trial court, has already been delayed 22 years by virtue of the post-conviction litigation. The hardship imposed by this delay on the family and friends of [victim] Deborah Pooley is significant. However, the hardship imposed on the Commonwealth and the Department of Corrections, the only adverse parties in this case, is not of that magnitude. Moreover, the Commonwealth and the Department both have a legal obligation to ensure that all statutory and constitutional requirements have been fully complied with prior to any execution. The public has a preeminent interest in ensuring that all public officials comply with the law. The Court has found serious questions about whether all statutory and constitutional requirements have been met in the challenged administrative regulations at issue here. Accordingly, this Court is duty bound to resolve those questions before allowing those administrative regulations to be implemented in such a final and irremediable fashion as the execution of the death penalty.

And it granted the temporary injunction after making the required findings to support granting a temporary injunction under our law,[20] specifically finding:

---

regulations contained no provisions establishing safeguards to ensure that mentally retarded prisoners were not executed.

**19.** *See Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 162 (Ky.2009) (trial court's grant of temporary injunction under CR 65.04 is not to be disturbed by appellate courts unless the trial court has clearly abused its discretion).

**20.** *See id.* at 161–62, *quoting Maupin v. Stansbury*, 575 S.W.2d 695, 699 (Ky.App.1978) ("First, the trial court should determine whether plaintiff has complied with CR 65.04 by showing irreparable injury. This is a mandatory prerequisite to the issuance of any injunction. Secondly, the trial court should weigh the various equities involved. Although not an exclusive list, the court should consider such things as possible detriment to

that the plaintiffs have presented substantial legal questions about the validity of the administrative regulations, that Wilson will suffer irreparable harm in the absence of injunctive relief, and that public interest favors maintenance of the *status quo* (including a stay on any further executions) until there has been a final decision on the merits of this case.

## VI. CONCLUSION.

Accordingly, the Court ORDERS:

1) The petitions for writ are DENIED; and

2) All pending motions are DENIED as moot.

All sitting. ABRAMSON, NOBLE, SCHRODER, and VENTERS, JJ., concur. CUNNINGHAM and SCOTT, JJ., dissent.

ENTERED: March 24, 2011.

/s/ John D. Minton, Jr.
    Chief Justice

the public interest, harm to the defendant, and whether the injunction will merely preserve the status quo. Finally, the complaint should be evaluated to see whether a substantial question has been presented. If the party requesting relief has shown a probability of

irreparable injury, presented a substantial question as to the merits, and the equities are in favor of issuance, the temporary injunction should be awarded. However, the actual overall merits of the case are not to be addressed in CR 65.04 motions.").